# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LISA RANSOM**<br>13035 Silver Maple Court<br>Bowie, Maryland 20715 | )<br>)<br>) |
| Plaintiff, | ) |
| vs. | )<br>) |
| | ) |
| **CENTER FOR NONPROFIT ADVANCEMENT**<br>1666 K Street, NW<br>Suite # 440<br>Washington, DC 20006 | )  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

## COMPLAINT

NOW COMES Plaintiff, Lisa Ransom (formerly known as "Lisa Ransom Brown"), by and through undersigned counsel, and files this complaint against Defendant, Center for Nonprofit Advancement ("CNA") (formerly known as the "Washington Council of Agencies"). In support thereof, Plaintiff alleges the following.

## JURISDICTION AND VENUE

1.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332. Further, this Court may exercise supplemental jurisdiction over the pendant state-law claims pursuant to 28 U.S.C. § 1367.

2.  Venue is proper because the alleged events occurred in the District of Columbia ("D.C.") Plaintiff was employed by Defendant in D.C., and Defendant regularly conducts business in D.C.

/S/

## PARTIES

3.   Plaintiff is an African-American woman who resides in Maryland.  At all times relevant herein, she was employed by Defendant.

4.   Defendant is a nonprofit organization organized under the laws of D.C.  At all times relevant herein, Defendant regularly conducted and transacted business in D.C. Defendant changed its name from the Washington Council of Agencies to the Center for Nonprofit Advancement in 2005.

## FACTS

5.   CNA hired Ms. Ransom as Director of Public Policy and Community Relations on September 8, 2003.

6.   Of eight senior staff positions during the time of Ms. Ransom's employment, six were filled with white employees, including the Executive Director, Mary Elizabeth Johnson ("Johnson").  The majority of racial minorities, *i.e.*, non-white employees, on staff at WCA held administrative support positions.

7.   By November 2003, Plaintiff and the Director of CNA's Center for Nonprofit Learning and Leadership, a Mexican-American woman, had begun to plan CNA's annual business meeting, then scheduled for December 3, 2003.

8.   Plaintiff was responsible for planning the awards portion of the annual meeting, which accounted for approximately half of the event.

9.   In December 2003, at the end of Plaintiff's mandatory three-month probationary period, she requested from Jeff Kost ("Kost"), who then was Deputy Director of External Affairs, the results of her probationary ninety-day review.  Kost stated that her work was "just fine," that she had nothing to worry about, and that he therefore would not conduct a probationary review.

10.   Thereafter, Plaintiff proposed to host an unprecedented outreach effort in Prince George's County's nonprofit community.  This effort was designed to create a partnership opportunity for CNA and the Human Service Coalition of Prince George's County.

/S/

11.  At all times relevant herein, Prince George's County fell within CNA's outreach and service community.

12.  Although this outreach effort was a part of CNA's strategic plan, CNA allocated only $1,000 to the conference, despite the fact that $20,000 had been approved.

13.  The conference in Prince George's County was highly successful.  The conference had more than 200 participants, including philanthropists and legislators from federal, state, and county governments.  The conference's participating individuals and organizations were predominantly African-American and/or served African-American communities.

14.  In a meeting on May 27, 2004, Plaintiff expressed concerns that Kost was consistently unwilling to engage in joint activities with Plaintiff that would inure to the benefit of Defendant.  Plaintiff further expressed, among other things, concern and dissatisfaction that she was held to a different standard than her white colleagues, and that the African-American trainers and presenters whom she had recruited to volunteer for Defendant were not treated appropriately.

15.  Shortly thereafter, on or about June 15, 2004, without prior warning or provocation, Defendant terminated Plaintiff's employment.

16.  In so doing, Defendant stated that Plaintiff was not a "good fit" for the organization.

17.  Two other non-White women—both of Latino heritage—were terminated within one year of Plaintiff.  One woman was terminated because she too allegedly was not a "good fit" for the organization.  The other woman, Arminda Valles-Hall, is a plaintiff in similar, if not identical employment discrimination litigation pending in the United States District Court for the District of Columbia, *Valles-Hall v. Center for Nonprofit Advancement*, 1:06-cv-00806-CKK.

18.  Plaintiff filed a discrimination claim in the District of Columbia Department of Human Rights, and has exhausted her administrative remedies.

/S/

## COUNT I

### Violation of District of Columbia Human Rights

### Act D.C. Code § 2-1402.11(a)(1)—Disparate Treatment

19.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 18 as if fully set forth herein.

20.   Defendant is an employer within the meaning of D.C. Code § 2-1401.02(9).

21.   Plaintiff is a member of a protected class, African-American, by virtue of her race.

22.   Defendant treated Plaintiff differently from similarly situated white employees in their assignments and performance evaluation criteria.

23.   Defendant did not have any legitimate business reason for subjecting Plaintiff to such disparate treatment.

24.   Further, Defendant's assessment that Plaintiff simply was not a "good fit" was a mere pretext for its unlawful discrimination.

25.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered embarrassment, loss of self-esteem, undue stress, mental anguish, emotional and psychological harm, and economic damages including lost wages.

## COUNT II

### Violation of District of Columbia Human Rights

### Act D.C. Code § 2-1402.11(a)(1)—Retaliation

26.   Plaintiff incorporates the allegations of paragraphs 1 through 25 as if fully set forth herein.

27.   In expressing concerns of racial bias and discrimination against Plaintiff and African-American volunteer trainers, Plaintiff was engaged in statutorily protected activity.

28.   By terminating Plaintiff's employment, Defendant subjected Plaintiff to an adverse employment action.

29.   Defendant's termination of Plaintiff's employment and her expression of concern regarding racial bias and discrimination are inextricably linked.

/S/

30.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered embarrassment, loss of self-esteem, undue stress, mental anguish, emotional and psychological harm, and economic damages including lost wages.

## COUNT III

### Violation of 42 U.S.C. § 1981—Disparate Treatment

31.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 34 as if fully set forth herein.

32.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered embarrassment, loss of self-esteem, undue stress, mental anguish, emotional and psychological harm, and economic damages including lost wages.

## COUNT IV

### Violation of 42 U.S.C. § 1981—Retaliation

33.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 36 as if fully set forth herein.

34.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered embarrassment, loss of self-esteem, undue stress, mental anguish, emotional and psychological harm, and economic damages including lost wages.

## COUNT V.

### Negligent Supervision

35.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 53 as if fully set forth herein.

36.   Defendant owed to Plaintiff a duty to use reasonable care in the supervision, training, and maintenance of personnel including, but not limited to, the adequate supervision, control and discipline of members of its senior staff for a violation of CNA policies and practice, as well as District of Columbia and federal civil rights laws.

/S/

37.   Defendant failed to enforce their policies of non-discrimination and non-retaliation against Plaintiff's supervisors, thereby breaching its duty of care in the supervision and maintenance of its personnel.

38.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered embarrassment, loss of self-esteem, undue stress, mental anguish, emotional and psychological harm, and economic damages including lost wages.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor, awarding:

    a.  Compensatory damages in an amount in excess of two-hundred and fifty thousand dollars ($250,000);

    b.  Punitive damages in an amount in excess of two-hundred and fifty thousand dollars ($250,000) for Defendant's deliberate, willful, and malicious conduct against Defendant, and to deter such conduct in the future; and

    c.  Attorneys' fees, costs, pre-judgment interest, post-judgment interest, and such other relief as this Court deems just and proper.

### <u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues so triable.

Dated this ___ day of May, 2006

/S/
_____

Donald M. Temple [408749]

Dhamian A. Blue [488664]

TEMPLE LAW OFFICES

1229 15th Street, N.W.

Washington, D.C. 20005

(202) 628-1101

**COUNSEL FOR PLAINTIFF**