# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☒ FEPA ☐ EEOC | 04-274-(CN) 10CA400236 |

D.C. Office Of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Lisa R. Ransom Brown | (301) 464-1494 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 13035 Silver Maple Court, Bowie, MD 20715 | | 09/06/1961 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Washington Council Of Agencies | Cat A (15-100) | (202) 457-0540 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1666 K Street, N.W., Suite 440, Washington, DC 20006 | | 001 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☒ OTHER *(Specify)* Employment

DATE DISCRIMINATION TOOK PLACE
EARLIEST 03/12/2004    LATEST 05/31/2004
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*:

I believe I have been discriminated against and subjected to disparate treatment and a hostile work environment in the terms, conditions and privileges of employment on the bases of my race (Black) and sexual orientation (hetereosexual) because:

I was hired by Respondent as the Director, Public Policy and Community Relations on Septemebr 8, 2003. The Respondent has not conducted an annual performance evaluation, but I have been advised that my work meets with if not exceeds expectations.

During meetings on March 12, 2004, April 8, 2004, April 27 and April 28, 2004, Respondent's Executive Director (White, homosexual) and Deputy Director for External Affairs (White, homosexual) told me that I was not adequately reaching out to nonprofit organizations. Yet, I consistently provided evidence to the contrary. Respondent subjected me to hostile Emails which ridiculed the quality of my work. Respondent's Deputy Director also made racially insensitive remarks and exhibited inappropriate behavior relative to African-Americans.

I am the only African-American heterosexual Director on staff. Respondent subjected me to disparate treatment by singling me out among its Directors by a separate evaluation process from my similarly situated co-workers (non-Black, homosexual, heterosexual). Among other things, Respondent complained that my keeping my office door closed and

\*\* Text is Continued on Attached Sheet(s) \*\*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |

Haydn Demas
Notary Public, District of Columbia
My Commission Expires 12-14-2008

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(Month, day and year)*  6/4/04

Date _____ Charge _____

EXHIBIT
A

EEOC FORM 5 (Rev. 07/99)

RESPONDENT'S COPY

Jun 04 16:18 2004  CP Initials         Chg # , Attachment Page 1

------------------------------------------------------------------

Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text

------------------------------------------------------------------

frequent use of Emails were not practiced by my colleagues.  However, at
least four (4) of my co-workers share the same practices, but they are
not subject to similar harassment.  My complaints to Respondent's
Executive Director were glossed over and ignored.  This has created a
hostile work environment for me.

I charge Respondent with an unlawful discriminatory practice, on the
bases of my race and sexual orientation, in violation of the D.C. Human
Rights Act of 1977, as amended, and Title VII of the Civil Rights Act of
1964, as amended.  I have not commenced any action, civil, criminal or
administrative, based on the above allegations, other than the
following: CROSS FILED WITH THE EEOC.

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### Office of Human Rights

**Judiciary Square Office**
441 4th Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax: (202) 727-9589



**Kenneth L. Saunders**
**Director**

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC 20020
Phone: (202) 727-4559 • Fax: (202) 645-6390

RECEIVED
JUL 2 1 2004
OPPENHEIMER, FLEISCHER & QUIGGLE

July 15, 2004

Mr. Charles H. Fleischer,
Oppenheimer, Fleischer & Quiggle, P.C.
7700 Old Georgetown Road, Suite 800
Bethesda, Maryland 20814-6100

**RE:    Lisa Ransom Brown v. Washington Council of Agencies**
          **Docket No.: 04-274-P (CN)**

Dear Mr. Fleischer:

The above-titled Complaint has been amended with the District of Columbia Office of Human Rights (OHR) to include the basis of retaliation and the issue of involuntary termination.

Along with a copy of the Amendment, the OHR is sending your client a request for information which may include interrogatories, document requests, notice of witness interviews and a notice of a site visit. Please forward your notarized responses to the Office's request for information **no later than twenty (20) business days from the receipt of this document**.

Should you have any questions in this regard, you may contact Mr. Haydn Demas, Investigator, by calling (202) 727-4559.

Sincerely,

Kenneth Saunders
Director

Enclosures



EXHIBIT
*B*

**DISTRICT OF COLUMBIA**
**OFFICE OF HUMAN RIGHTS**


**IN THE MATTER OF:**

Lisa Ransom Brown                      )
                                       )    <u>**Amendment to Complaint:**</u>
    **Complainant**                     )
                                       )
    -v-                                )    **Docket No.:04-274-P (CN)**
                                       )
Washington Council of Agencies         )
                                       )
    **Respondent**                      )
                                       )


The Complaint referred to above is hereby amended to include the basis of retaliation and the issue of involuntary termination. The allegations shall read as follows:

> **In a meeting on May 27, 2004, I expressed my concerns that: Respondent's Deputy Director for External Affairs was consistently unwilling to engage in joint activities with me that would be directly beneficial to Respondent; racially insensitive remarks were made; that there was bias in my professional treatment and treatment of Black Trainers/Presenters whom I had secured to run advocacy workshops.**

> **As a result, in a meeting on June 15, 2004, Respondent terminated my employment in retaliation. Respondent's termination letter dated June 14, 2004, but references the meeting on June 15, 2004, states: "this termination reflects most on the lack of fit between you and the scope of the job responsibilities outlined." Throughout my tenure with Respondent, I had not been given the support and resources that my position as Director, Public Policy and Community Relations required**

> **Upon review of my activities' reports, work samples and my most recent activity, the Prince George's County Empowerment Conference, I contend that without the aid of promised staff support as stated in my job description, discussed in the interview process and noted in Respondent's strategic work plan-which gave me until June 30, 2004, to complete my task assignment, I was able to accomplish the majority of my strategic plan work objectives.**

Lisa Ransom Brown, being duly sworn, deposes and says: that she is the Complainant herein; that she has read the foregoing amended complaint and knows the contents thereof; that the same is true of her own knowledge, except as to the matters therein stated on information and belief; and that as to these matters she believes the same to be true.

_____
(Signature of Complainant)

SUBSCRIBED AND SWORN to before me this __7__ day of __July__, of 2004.

_____
Notary Signature

**Haydn Demas**
Notary Public, District of Columbia
My Commission Expires:
My Commission Expires 12-14-2008

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Office of Human Rights



**Judiciary Square Office**
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 Fax: (202) 727-9589

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559 Fax: (202) 645-6390

June 26, 2006

Mr. Charles H. Fleischer
Oppenheimer, Fleischer & Quiggle, P.C.
7700 Old Georgetown Road, Suite 800
Bethesda, Maryland 20814

RE:  Docket No.: 04-274-P(CN)
     Lisa R. Ransom Brown v. Washington Council of Agencies

Dear Mr. Fleischer:

With reference to your recent inquiry to the Office of Human Rights (OHR), regarding the status of the above-referenced Charge, please be advised that information is still being gathered to better assess the Complainant's allegations of discrimination against the Respondent.  To date, the OHR is in the midst of conducting its investigation.

Once all relevant submissions have been received, the OHR will review the entire record and make a determination on whether or not there is probable cause to believe discrimination occurred.  The determination will be sent by certified mail to both parties and/or their respective counsel.

If you should require any further information, please feel free to contact me at (202) 727-4559.

Sincerely,

Haydn Demas
Investigator



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of Human Rights**





Judiciary Square Office
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559  Fax: (202) 727-9589

Penn Branch Office
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559  Fax: (202) 645-6390


JUL 7  2006
OPPENHEIMER, FLEISCHER & QUIGGLE

## LETTER OF DETERMINATION

July 3, 2006

Ms. Lisa Ransom Brown
c/o Mr. Donald M. Temple, Esq.
Temple Law Offices
1200 G Street, N.W., Suite 370
Washington, D.C. 20005

**RE:**  ***Lisa Ransom Brown v. Washington Council of Agencies***
***Docket No.  04-274-P (CN)***
***EEOC No.: 10CA400236***

Dear Ms. Brown:

The District of Columbia Office of Human Rights (hereinafter referred to as "OHR") has completed the investigation of the above referenced complaint.  You are hereinafter referred to as **"COMPLAINANT."**  Washington Council of Agencies, the company which employed you is hereinafter referred to as **"RESPONDENT."**

## ISSUES PRESENTED

(1)    Whether Respondent subjected Complainant to disparate treatment on the bases of her sex (female) and sexual orientation (heterosexual) when during meetings in March and April 2004, Respondent allegedly complained about her job performance.

(2)    Whether Respondent subjected Complainant to a hostile work environment based on her sex (female) and sexual orientation (heterosexual) when Respondent allegedly: a) singled her out by a separate evaluation process; b) complained about her keeping her office door closed and about her frequent use of emails; c) subjected her to hostile emails which ridiculed the quality of her work; d) made racially insensitive remarks and inappropriate behavior relative to African-Americans; and c) ignored her complaints to its Executive Director.


**EXHIBIT**
D

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 2 of 18*

(3)     Whether Respondent retaliated against Complainant for complaining of
        discrimination when it terminated her on June 15, 2005.

## JURISDICTION

Respondent was organized in 1979 to serve nonprofit organizations in the Washington,
DC metropolitan area. Respondent provides services in education, advocacy and
nonprofit community building, and group purchasing programs (limited to members)
Respondent is located at 1666 K Street, N.W., Suite 440, Washington, D.C. 20006.
Respondent is not exempt for any known reason from the laws of the District of
Columbia prohibiting unlawful discrimination. Respondent is therefore subject to the
enforcement jurisdiction of the OHR.

## FINDINGS OF FACT

The OHR's investigation of this matter included the Complainant's sworn complaint, the
Respondent's sworn Position Statement and responses to the OHR's interrogatories and
Request for Documents, and documents submitted therewith, and Witness interviews.
Based on its investigation, the OHR makes the following findings of fact.

### Disparate Treatment

Complainant states that she was hired by Respondent on September 8, 2003, as the
Director, Public Policy and Community Relations.

Respondent concurs that Complainant was an at-will employee from September 8, 2003,
when she was hired after the incumbent Director of Public Policy and Community
Relations died. Respondent states that Complainant's job description required her to
"play an active role with WCA in supporting and communicating with local nonprofits on
local issues" and it assigned her a long list of responsibilities, including analyzing and
evaluating issues for the local nonprofit sector; monitoring policy and legislation relevant
to local nonprofits; developing and maintaining strong relationships with policy makers
in all local jurisdictions; and establishing, developing and maintaining strong constituent
relations. The position required her to be able to work with people and to have strong
written and oral communication skills.[1] Respondent states that Complainant's work was
carefully monitored, since she was its public face and was its representative to its
members and to public officials.

Complainant claims that on March 12, 2004, following her submission of a Public Policy
activities report in preparation for Respondent's Board of Directors meeting, she met
with Respondent's Executive Director (White, homosexual) and Deputy Director for
External Affairs (White, homosexual). Complainant states that this meeting was viewed
as a weekly advocacy update meeting, but because of various schedules, these meeting

---

[1] Director of Public Policy and Community Relations Job Description

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 3 of 18*

did not occur weekly. Complainant alleges that during this March 12, 2004 meeting, and subsequent meetings on April 8, April 27 and April 28, 2004, the Executive Director and the Deputy Director expressed dismay and concern regarding her apparent inability to reach out to nonprofit organizations in the Washington metropolitan area. Complainant states that she had consistently provided information both in print and via email confirming her outreach activity to nonprofit organizations and elected and appointed officials in the District of Columbia, Montgomery and Prince George's Counties in Maryland, as directed by Respondent's newly revised strategic work plan for 2004.[2]

Complainant submits her First 30-Day Review and Goals for the 2004 Advocacy Plan which lists her meetings with elected officials from the District of Columbia, Montgomery and Prince George's Counties, and with various organizations, both local and national.[3] Complainant further submitted her Public Policy and Community Relations Interim Report (mid Sept. – early Dec. 2003) December 9, 2003; her Advocacy Weekly Meeting February 20, 2004 Discussion Agenda; Advocacy/Public Policy and Community Relations Activities-December 2003-March 2004 as of March 5, 2004; her calendar of activities September 2003- April 2004 and her Expense Reimbursement Request September 2003 - February 2004; and several letters, emails, and membership forms. Complainant contends that these all reflect Complainant's interactions with elected officials of the metropolitan area and with various organizations. Complainant claims that the Deputy Director presented her with a list of Public Policy Director's objectives, dated March 12 – June 30, 2004.[4] Complainant states that she noted that at least half of the items listed had been addressed, and in some instances completed.[5]

Respondent contends that Complainant's work was substantially deficient. Respondent explains that after Complainant had worked for about four (4) months, it became increasingly clear that she was making little progress toward meeting her responsibilities, that she was very unfocused in her work, and that she moved from one activity to another without any plan or priority. Respondent asserts that Complainant was ineffective in developing and maintaining good relations with its membership, e.g., the Executive Director received complaints about Complainant's work from several members; a colleague reported that her performance at a Congressional staff briefing was poor and that she did a poor job facilitating a discussion held by a Board member's organization; Complainant failed to follow up on an issue that had arisen between a member organization and a Montgomery County public official; Complainant failed to make contact with a number of members that the Executive Director had specifically identified; and Complainant failed to meet deadlines for submitting newsletter items, reports and

---

[2] WCA Strategic Plan for 2003-2006 Goals & Objectives Amended January 21, 2004.
[3] Complainant's First 30-Day Review and Goals for the 2004 Advocacy Plan.
[4] Washington Council of Agencies Director of Public Policy and Community Relations Objectives March 12 – June 30, 2004.
[5] Complainant's email, dated March 23, 2004, to the Deputy Director, cc: the Executive Director, Subject: Advocacy Strategic Work Plan Follow Up.

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 4 of 18*

time sheets.[6] Respondent continues that as Complainant's shortcomings became increasingly apparent, senior staff decided to provide more frequent supervision in an effort to help her succeed. Respondent claims that it attempted to hold weekly review meetings beginning in January 2004, but she resisted. As a result, only nine (9) meetings occurred between January and June 2004.[7] Respondent indicates that Complainant said she was unavailable for additional meetings. Respondent's Executive Director states that in preparation for the March 12, 2004 meeting, the Deputy Director developed a written list of objectives for Complainant, with deadlines for each objective drawn from the annual work plan that Complainant and all other senior staff participated in developing.[8] This was used as a basis for a discussion at the meeting, following which the Deputy Director compiled his list, which included the Executive Director's and Complainant's comments regarding the status of the objectives.[9] The Deputy Director followed the same procedure in subsequent meetings, but Complainant repeatedly refused to sign her agreement to the compilations.[10]

Complainant indicates that after the March 12, 2004 meeting, she provided status bullets for the Executive Director and the Deputy Director via email. Complainant claims that in the following meeting her status report was not reflected in the Deputy Director's objectives. Complainant states that on April 8, 2004, the Deputy Director presented the same objectives form, with an inclusion stating that Complainant signing the agreement would signify her agreement with the objectives and that failing to meet the objectives would be reason for a formal evaluation or complaint. Complainant alleges that on April 14, 2004, she came to work to find the objectives report in her chair with a request for a signature by the close of business that day. Complainant states that she did not sign the form, but acknowledged receipt of it by email and then contacted her attorney who advised her to contact the Office of Human Rights.

Respondent states that its diversity track record belies any intent to discriminate against Complainant or anyone else. Respondent asserts that both its workforce and its board are about evenly divided between Whites and minorities. Respondent indicates that all the individuals who preceded Complainant in the position of Director of Public Policy and Community Relations have been African-American and, so far as it knows, heterosexual (Respondent does not know or make any attempt to collect information on sexual orientation). The most recent individual before Complainant occupied the position for eight years and would have continued to do so but for her untimely death in childbirth.

---

[6] Respondent's Executive Director cites an example that on May 27, 2004, she requested all senior staff to submit regular reports by close-of-business June 1, 2004 for inclusion in her report to the Board. After several follow-up requests by the Deputy Director, Complainant finally submitted her report on the afternoon of June 3, where she failed to identify issues; failed to state any planned action; and contained no analysis of the meetings during the quarter.

[7] Meetings were held on January 14, 2004; February 20, 2004; March 12, 2004; April 8, 2004; April 27, 2004; April 28, 2004; May 7, 2004; May 17, 2004; and May 27, 2004.

[8] Respondent's Executive Director's Sworn Affidavit, dated July 14, 2004.

[9] Refer to Footnote No. 3

[10] Respondent's Deputy Director for External Affairs Sworn Affidavit, dated July 14, 2004.

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 5 of 18*

Respondent claims that individual actions by individual staff members (including the Executive Director) also belie discrimination.[11] Respondent opines that it prides itself on being an equal opportunity employer, as stated in its Personnel Handbook, Article III.[12,13]

## Hostile Work Environment

Complainant alleges that Respondent subjected her to "hostile emails" which ridiculed the quality of her work.[14] Complainant also alleges that the Deputy Director also made racially insensitive remarks and exhibited inappropriate behavior relative to African-Americans, e.g., when asked to join Complainant at a lunch for the Prince George's County Executive, his response was: "I'm afraid." Complainant also contends that he interrupted a planned meeting with an African-American Advocacy Trainer, asking them to leave the designated meeting area because a White group arrived 25 minutes early for the space. In addition, another Black Trainer was accosted in Respondent's office hallway.[15] Complainant alleges that as the only African-American heterosexual Director on staff, Respondent singled her out for a separate evaluation process from her similarly situated co-workers (non-Black, homosexual, heterosexual).

Respondent's Executive Director contends that during one of their supervisory meetings, Complainant stated that she did not trust or respect the Deputy Director because he was unprofessional and racist. The Executive Director states that when asked the basis for her accusation, Complainant related the incident of the Deputy Director responding that he was afraid to go there, which she (Complainant) took to be racist. Respondent's Deputy Director states that to the best of his recollection, his actual response was, "I'm afraid I can't go," or words to that effect.[16] Respondent claims that Complainant was reminded of the grievance procedure in the Personnel Handbook, but to their knowledge, she never filed a grievance.[17] Respondent asserts that Article X of the Personnel Handbook prohibits harassment on the same grounds outlined in Article III, and it urges employees who believe that they have been subjected to discriminatory harassment to report their concerns immediately to the Executive Director.[18] Respondent states that Complainant was not singled out for a special evaluation process, for it performs a formal evaluation

---

[11] Respondent refers to the Executive Director and other Caucasian employees contributing their leave to an African-American employee of 12 years who had been diagnosed with cancer, so that she could be paid for the eight-month period until her death.

[12] WCA is committed to a policy of equal employment opportunity, and does not discriminate in the terms, conditions or privileges of employment on account of race…sexual orientation, or otherwise as may be prohibited by federal or state law.

[13] Complainant did not proffer a rebuttal to Respondent's position statements when requested.

[14] Email from the Deputy Director to Complainant, dated April 14, 2004, Subject: Documents

[15] Letter, dated February 26, 2004, from a potential Trainer with the Center for Learning and Leadership to Respondent's Executive Director, recounting an incident on February 17, 2004.

[16] See Footnote No. 9.

[17] Respondent's Personnel Handbook. Complainant's Acknowledgement of Respondent's Employee Handbook, signed 8 September, 2003.

[18] Personnel Handbook Article IX establishes a detailed grievance procedure for any employee who feels that inappropriate corrective action or other improper action has been taken against him or her.

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No.  04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 6 of 18*

for all employees in late June or early July of each year.  No formal evaluation of anyone, including Complainant, took place during her employment.  Respondent asserts that its efforts to counsel Complainant was not part of an evaluation process, they were undertaken to help her succeed in her new position.

In an interview with this Investigator, Complainant's witness affirmed the incident of the Black Advocacy Trainer being accosted in Respondent's hallway.  The witness added that the mindset of senior management was such that a lot of generalizations and statements were made about people which reflected a lack of understanding and respect for those not of similar backgrounds.  The witness also indicated that this created a negative work environment (not necessarily hostile).  However, the witness did affirm that there was the grievance process which an employee could use if there was a problem, as described in the Personnel Handbook.

Complainant further alleges that Respondent complained about her keeping her office door closed and her frequent use of emails were not practiced by her colleagues.  Complainant avows that at least four (4) of her co-workers share the same practices, but they are not subjected to similar harassment.  Complainant claims that her complaints to Respondent's Executive Director were glossed over and ignored, all of which created a hostile work environment for her.

Respondent's Executive Director indicates that Complainant's work habits did not easily mesh with those of most of Respondent's other staff members.[19]  The Executive Director explains that most of the staff (herself and the Deputy Director included) kept their office doors open, except when dealing with personnel issues or other confidential or highly sensitive matters.  The Executive Director continues that they also have regular, face-to-face contact during the workday to discuss matters.  Complainant worked with her office door shut, spent a great deal of her in-office time on the telephone, and communicated with staff members mostly via email.  Respondent Executive Director acknowledges that she counseled Complainant on these matters, as she counseled other staff members on their work habits when necessary, and that she did not single Complainant out for criticism.[20]

## Retaliation

Complainant alleges that as a result of her complaints about Respondent's Deputy Director for External Affairs made in a meeting on May 27, 2004, Respondent terminated her employment in a meeting on June 15, 2004.  Complainant claims that Respondent's termination letter, dated June 14, 2004, but references the meeting on June 15, 2004, states: "this termination reflects most on the lack of fit between you and the scope of the

---

[19] See Footnote No. 7.
[20] Respondent's Deputy Director concurred, stating that he also conducted weekly supervisory meetings with the Communications Director. See Footnote No. 9.

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 7 of 18*

job responsibilities outlined."[21] Complainant states that throughout her tenure, she had not been given the support and resources that her position as Director, Public Policy and Community Relations required. Complainant contends that a review of her activities' reports, work samples and her most recent activity, the Prince George's County Empowerment Conference, she was able to accomplish the majority of her strategic plan work objectives without the aid of the promised staff support, as noted in Respondent's strategic work plan.

Respondent contends that Complainant did not avail herself of the grievance procedure to grieve the alleged harassment, as described in the Personnel Handbook. Respondent notes Complainant's complaints of a general lack of support and resources but without specifics, and states that it went to extraordinary lengths to assist Complainant in succeeding, e.g. scheduled weekly goal meetings. Respondent counters that Complainant was discharged for substantial deficiencies in her performance, as described above. Respondent states that in late May 2004, it's Executive Director and Deputy Director decided to terminate Complainant for unsatisfactory performance. Respondent explains that at the time of the decision, Complainant was working on a 1½ day conference, co-sponsored by Respondent, scheduled for June 10-11, 2004. Respondent explains that because terminating Complainant at the time could have jeopardized its role as cosponsor and jeopardized the conference itself, they delayed firing Complainant until after the conference.

Respondent states that on June 15, 2004, the Deputy Director informed Complainant that she was being terminated for unsatisfactory performance.[22] Complainant was given an opportunity to resign, which she declined. Respondent's Executive Director avers that her decisions to counsel Complainant regarding her work habits, to meet with her on a regular basis for supervision, and to fire her were motivated in each case solely by her unsatisfactory performance as Director of Public Policy and Community Relations, and not motivated in any way by her race or her sexual orientation. Respondent's Executive Director asserts that Respondent's decision to fire Complainant had already been made prior to the meeting on May 27, 2004, and her termination was not in retaliation for anything that occurred at that May 27 meeting. Respondent adds that it terminated Complainant on June 15, 2004, and it received Complainant OHR complaint on June 17, 2004.

## STANDARD OF REVIEW

In this forum, in order for Complainant to prevail, the OHR's record must contain credible, probative and substantial evidence from which a reasonable person would

---

[21] Complainant's Termination Letter, dated June 14, 2004, signed by the Deputy Director for External Affairs.
[22] Termination Letter stated in part: This termination is based upon lack of progress you made against the objectives we agreed to during our meetings…These areas include the following: Prioritization of staff requests and long term projects… Responding to assignments in a timely manner…Attentiveness to deadlines…Providing leadership in public policy on behalf of WCA

conclude that Complainant met the prima facie elements of discriminatory behavior, and that a legitimate, nondiscriminatory explanation for the behavior does not exist. 4 DCMR § 715.1; 4 DCMR §499.1. In cases alleging a hostile work environment, the OHR's record must contain credible, probative and substantial evidence from which a reasonable person would find that the *prima facie* elements of a hostile work environment existed and that the Respondent is either not entitled to an affirmative defense or that the OHR's record contains insufficient evidence to support Respondent's affirmative defense. Id

## LEGAL ANALYSIS

### DISPARATE TREATMENT

The DCHRA makes it unlawful to "...discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex or national origin," among other protected categories. D.C. Official Code § 2-1402.11(a)(1) (2001 Edition).

In the absence of direct evidence of discrimination, disparate treatment claims under the DCHRA are analyzed under the three-part burden shifting standard applicable in Title VII cases, and set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Atlantic Richfield Co. v. District of Columbia Commission on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the employee to prove her *prima facie* case of discrimination by a preponderance of the evidence. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993*); see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, (1981). If the employee satisfies her burden, she raises a rebuttable presumption that the employer's conduct is unlawful discrimination. *Arthur Young*, 631 A.2d at 361. After this rebuttable presumption is raised, the employer must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield*, 515 A.2d at 1099 (citing *Burdine*, 450 U.S. at 254). The employer can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus." *Atlantic Richfield*, 515 A.2d at 1099-1100. "The employer need not persuade the ... [trier of fact] that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If the employer articulates a legitimate nondiscriminatory reason for the employment action, "the burden shifts back to the employee to prove, again by a preponderance of the evidence, that the employer's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young*, 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. Thus, once the employer satisfies its burden of producing a nondiscriminatory reason for its action, the employee must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. 502, 515 (emphasis in original).

Guided by the Supreme Court's analysis in *McDonnell Douglas*, the Complainant may establish a *prima facie* case of national origin, age, and religion discrimination under the DCHRA with sufficient evidence that: (1) she belongs to a protected class; (2) she was qualified for her position and meeting her employers legitimate expectations; (3) Respondent took an adverse action against her; and (4) her sex and sexual orientation were substantial factors in the adverse action taken by the Respondent. *Atlantic Richfield Co. v. District of Columbia Commission on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986).[23]

An adverse action in a disparate treatment claim is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See, Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446, 456 (D.C. Cir. 1999) citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1999). In the absence of an action resulting in a diminution of pay or benefits, a Plaintiff must establish the occurrence of an action with "materially adverse consequences affecting the terms, conditions, or privileges of [his] employment. *Brown v. Brody at 457*. An "employment decision does not rise to the level of an actionable adverse action...unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA*, 102 F. Supp. 24, 29 (D.D.C. 2000). An action that the Plaintiff establishes undermines his ability to perform his job satisfactorily, or that threatens his future employment prospects, would be an adverse consequence, and create a material employment disadvantage. See, *Mack v. Strauss,* 134 F. Supp. 2d 103; 2001 U.S. Dist. LEXIS 2341 (D.D.C. 2001).

While an adverse employment action is not limited to a particular type of personnel action, *Cones v Shalala*, 339 U.S. App. D.C. 299, 199 F.3d 512 (D.C. Cir. 2000); *Passer v. American Chemical Society*, 290 U.S. App. D.C. 156, 935 F.2d 322 (D.C. Cir. 1991), not all personnel actions are adverse actions under Title VII. *Brody* at 453. Minor changes in work-related duties or opportunities are not actionable unless accompanied by "some other adverse change in the terms, conditions or privileges of employment." *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. 2002). Examples of personnel actions that, without more, are not actionable under Title VII are employee inconvenience, an increased workload, a change in assignments and work-related duties, a lateral transfer or denial of a lateral transfer, temporary designation in a position and the delay of a temporary designation. *Stewart at 1135-1136; Brody at 457; Mungin v. Katten*, 325 U.S. App. D.C. 373, 116 F.3d 1549, 1557 (D.C. Cir. 1997). Neither a negative performance evaluation, false accusation, nor reprimand is an adverse employment action in the absence of some material employment disadvantage. *Stewart* at 1137; *Mack* at 112,

---

[23]    In interpreting [the Human Rights Act, the Court of Appeals has] generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance...." *Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al.*, 715 A.2d 873, 889, n.31 (D.C. 1988).

citing *Childers v. Slater*, 44 F. Supp. 2d 8, 20 (D.D.C. 1999). Subjective injuries such as damage to an employee's reputation, and public humiliation are not, in and of themselves, necessarily adverse employment actions. *Forkio v. Powell*, 306 F.3d 1127 (D.C. Cir. 2002) *Stewart* at 1137; Mack at 113, citing *Childers* at 20. The same is true of mere investigations of an employee, *Mack* at 114, citing *Yerdon v. Henry*, 91 F.3d 370, 378 (2nd Cir. 1996), or workplace ostracism. *Mack* at 114, citing *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996).

Finally, not "[every employment action] that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "Mere idiosyncrasies of personal preference are not sufficient to state an injury." *Brown v. Brody* at 339. If the foregoing were the case, any action an "irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 46 (D.C.D.C. 2001). Moreover, the DCHRA is not intended to be an avenue for "judicial review of business decisions," or for Courts to act as "super-personnel departments." See, *Brodetski* at 45.

In proving sex and sexual orientation were substantial factors in the adverse action, a Complainant may be introduce evidence that a "similarly situated" person outside Complainant's protected class was treated more favorably. See, *Hollins v. Federal National Mortgage Association*, 760 A.2d 563, 578 (2000). A similarly situated person is one who is similar to the Complainant in all "relevant aspects." *Id.* Relevant aspects include their respective employment situations and the circumstances generating the allegation of discrimination. *Id.* In short, the Complainant and the other employee must have a comparable employment status, and must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's response to it. *Id.* In order to demonstrate that sex and sexual orientation were substantial factors in Complainant's termination, evidence can be introduced that the Respondent advertised for the vacant position, or hired a person into the position who was outside of the Complainant's protected categories.

Complaints filed pursuant to the DCHRA must be filed within one year of the occurrence or discovery of an unlawful discriminatory practice. D.C. Official Code § 2-1403.4 (2001 Edition). *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 399 (D.C. 1991). The Complainant filed his initial complaint with the OHR on April 15, 2004. Therefore, any acts of discrimination must have occurred between April 15, 2003 and April 15, 2004 in order for the complaint to be timely. "A discrete retaliatory or discriminatory act[, such as a 'termination, failure to promote, denial of transfer, or refusal to hire'] 'occurred' on the day that it 'happened." *Amtrak v. Morgan*, 536 U.S. 101, 110 (2002). Thus, Complainant's allegation of race based disparate treatment as described above, is timely, as Complainant has filed within the one-year statute of limitations.

### Respondent did not discriminate against Complainant on the bases of her sex (female) and sexual orientation (heterosexual) when during meetings in March and April 2004, Respondent allegedly complained about her job performance.

Complainant alleges that during meetings in March and April 2004, Respondent complained about her job performance. Complainant satisfies the first element of her *prima facie* case of discrimination. As a female and heterosexual, she is a member of protected classes under the DCHRA. However, Complainant is unable to satisfy the second element of her *prima facie* case that she was qualified for her position and was performing to the expectations of her employers. The OHR's record contains evidence that reflects Respondent's dissatisfaction of Complainant's performance through written communications from Respondent's Deputy Director. Respondent's attempts to hold weekly review meetings to assist Complainant in her performance; and prior to the March 14, 2004 meeting, its written list of objectives for Complainant, with deadlines for each objective drawn from the annual work plan expressed some dissatisfaction with Complainant's job performance areas. Thus, Complainant does not meet the second element of her *prima facie* case, and consequently has not established her *prima facie* case of discrimination.

Even if Complainant had established the second element, she would not have established the remaining elements. The alleged comments regarding Complainant's job performance do not constitute adverse actions. As analyzed *supra*, an adverse action in a disparate treatment claim is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." In the absence of an action resulting in a diminution of pay or benefits, Complainant must establish the occurrence of an action with "materially adverse consequences affecting the terms, conditions, or privileges of [his] employment. An "employment decision does not rise to the level of an actionable adverse action…unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." Therefore, the alleged comments regarding Complainant's performance are not adverse, and do not satisfy the third element.

Furthermore, Complainant has not demonstrated that her membership in the protected classes was a substantial factor in Respondent's actions. Complainant has not introduced evidence that a "similarly situated" person outside Complainant's protected class was treated more favorably. A similarly situated person is one who is similar to the Complainant in all "relevant aspects." Relevant aspects include their respective employment situations and the circumstances generating the allegation of discrimination. In short, Complainant has not proffered any evidence that another employee with a comparable employment status, engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's response to it and was treated more favorably. As such, Complainant fails to establish her case.

## HOSTILE WORK ENVIRONMENT

The *DCHRA* makes it unlawful to "...discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex, matriculation or national origin," among other protected categories. *D.C. Official Code § 2-1402.11(a)(1)* (2001 Edition). It is substantially similar to Title VII. *Howard v. Best*, 484 A.2d 958, 977 (D.C. 1984). "In interpreting [the Human Rights Act, the Court of Appeals has] generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance...." *Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al.*, 715 A.2d 873, 889, n. 31 (D.C. 1988).

When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Whether an environment is hostile or abusive is determined by the totality of the circumstances, such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. The effect on the employee's psychological well-being may be considered, but the employee need not prove psychological injury. *Id.* at 23.

In the District of Columbia, an employer may not be held liable for a supervisor's hostile work environment harassment, not resulting in a tangible employment action, if the employer is able to establish that it adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that he knew or should have known that he could report the harassment to the employer without fear of adverse consequences and the employee's conduct in not seeking relief pursuant to the policy was unreasonable. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth.*, 524 U.S. 742 (1998); *Gary v. Long*, 59 F.3d 1391, *cert. den.* 516 U.S. 1011 (D.C. Cir. 1995). A Complainant may establish a *prima facie* case of hostile work environment if she can demonstrate that: (1) she is a member of a protected class; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on membership in the protected class; and (4) the harassment is severe or pervasive enough to affect a term, condition, or privilege of employment. Unwelcome harassment is conduct that the employee neither solicited nor invited and that the employee regarded as undesirable or offensive. *Daka, Inc. v. Breiner*, 711 A.2d 86 (D.C. 1998). In determining the degree of severity or pervasiveness of hostility, the test is whether working conditions have been discriminatorily altered. *Id.* at 92 (citing *Howard University v. Best*, 484 A.2d 958, 978 (D.C. 1984) and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)).

Where Complainant seeks to hold an employer liable for the conduct of an employee, Complainant must also establish *respondeat superior* liability. *Raymond v. U.S. Capitol Police Board*, 157 F. Supp. 2d 50, 57-58 (D.D.C. 2001). "More than a few isolated

incidents must have occurred, and genuinely trivial occurrences will not establish a *prima facie* case. However, no specific number of incidents, and no specific level of egregiousness need be proved. The trier of fact should consider the amount and nature of the conduct, the plaintiff's response to such conduct, and the relationship between the harassing party and the plaintiff." *Daka*, 711 A.2d at 93.

According to the EEOC and related case law, when harassment by a supervisor creates an unlawful hostile work environment, but does not result in a tangible employment action, the employer can raise an affirmative defense to liability or damages, which it must prove by a preponderance of the evidence. The defense consists of two necessary elements:

> (a) the employer exercised reasonable care to prevent and correct promptly any harassment; and

> (b) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

If an employer can prove that it discharged its duty of reasonable care and that the employee could have avoided all of the harm but unreasonably failed to do so, the employer will avoid all liability for unlawful harassment. If an employer cannot prove that it discharged its duty of reasonable care and that the employee unreasonably failed to avoid the harm, the employer will be liable. For example, if unlawful harassment by a supervisor occurred and the employer failed to exercise reasonable care to prevent it, the employer will be liable even if the employee unreasonably failed to complain to management or even if the employer took prompt and appropriate corrective action when it gained notice. See, e.g., *EEOC v. SBS Transit, Inc.*, No. 97-4164, 1998 WL 903833 at *1 (6th Cir. Dec. 18, 1998) (unpublished) (lower court erred when it reasoned that employer liability for sexual harassment is negated if the employer responds adequately and effectively once it has notice of the supervisor's harassment; that standard conflicts with affirmative defense which requires proof that employer "took reasonable care to prevent and correct promptly any sexually harassing behavior and that the plaintiff employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer").

The first prong of the affirmative defense requires a showing by the employer that it undertook reasonable care to prevent and promptly correct harassment. Such reasonable care generally requires an employer to establish, disseminate, and enforce an anti-harassment policy and complaint procedure and to take other reasonable steps to prevent and correct harassment. The EEOC artfully details that there are no "safe harbors" for employers based on the written content of policies and procedures. Even the best policy and complaint procedure will not alone satisfy the burden of proving reasonable care if, in the particular circumstances of a claim, the employer failed to implement its process effectively. See *Hurley v. Atlantic City Police Dept.*, No. 96-5634, 96-5633, 96-5661, 96-5738, 1999 WL 150301 (3d Cir. March 18, 1999) ("*Ellerth* and *Faragher* do not, as the defendants seem to assume, focus mechanically on the formal existence of a sexual

harassment policy, allowing an absolute defense to a hostile work environment claim whenever the employer can point to an anti- harassment policy of some sort"; defendant failed to prove affirmative defense where it issued written policies without enforcing them, painted over offensive graffiti every few months only to see it go up again in minutes, and failed to investigate sexual harassment as it investigated and punished other forms of misconduct.).

For example, if the employer has an adequate policy and complaint procedure and properly responded to an employee's complaint of harassment, but management ignored previous complaints by other employees about the same harasser, then the employer has not exercised reasonable care in preventing the harassment. See *Dees v. Johnson Controls World Services, Inc.,* 168 F.3d 417, 422 (11th Cir. 1999) (employer can be held liable despite its immediate and appropriate corrective action in response to harassment complaint if it had knowledge of the harassment prior to the complaint and took no corrective action). Similarly, if the employer has an adequate policy and complaint procedure, but an official failed to carry out his or her responsibility to conduct an effective investigation of a harassment complaint, the employer has not discharged its duty to exercise reasonable care. Alternatively, lack of a formal policy and complaint procedure will not defeat the defense if the employer exercised sufficient care through other means.

**Respondent did not subject Complainant to a hostile work environment based on her sex (female) and sexual orientation (heterosexual) when Respondent allegedlly: a) singled her out by a separate evaluation process; b) complained about her keeping her office door closed and about her frequent use of emails; c) subjected her to hostile emails which ridiculed the quality of her work; d) made racially insensitive remarks and inappropriate behavior relative to African-Americans; and c) ignored her complaints to its Executive Director.**

Complainant alleges that Respondent subjected her to a hostile work environment when: a) singled her out by a separate evaluation process; b) complained about her keeping her office door closed and about her frequent use of emails; c) subjected her to hostile emails which ridiculed the quality of her work; d) made racially insensitive remarks and inappropriate behavior relative to African-Americans; and c) ignored her complaints to its Executive Director.

Complainant fails to establish a *prima facie* case. Complainant satisfies the first element of her case in that she is female and heterosexual. Since the burden is not onerous, OHR will accept Complainant's allegation that she was subjected to unwelcome harassment. Conduct is unwelcome when it is offensive and unsolicited. However, Complainant cannot satisfy the third element of her *prima facie* case by demonstrating that the harassment was based on her membership in the protected classes of sex (female) and sexual orientation (heterosexual). Complainant provides no credible testimonial or documentary evidence to support her argument. Respondent states that they were aware of Complainant's race when they hired her, which was similar to the incumbent's (of

eight years) before her untimely death. Respondent states that each of the individuals who was employed in Complainant's position prior to Complainant, was African-American, and to their knowledge heterosexual. Respondent indicates that being criticized about her work and forced to attend supervision meetings, being told to keep her door open and to limit her use of internal email are too trivial and inconsequential to amount to adverse employment action. Although, a witness did concur that there might have been a lack of sensitivity to the diversity in the workplace, it did not rise to a hostile work environment. The witness emphasized that there was recourse in the grievance process as promulgated in the Personnel Handbook. Therefore, Complainant fails to establish her *prima facie* case of hostile work environment.

## C)    RETALIATION

The District of Columbia Court of Appeals enunciated the elements of a *prima facie* case of retaliation in *Arthur Young*, 631 A.2d at 354; *see also Goos v. Nat'l Ass'n of Realtors*, 715 F. Supp. 2 (D.D.C. 1989). Particularly, an employee must demonstrate that: 1) she engaged in a protected activity; 2) the employer took an adverse action against her; and (3) a causal relationship exists between the protected activity and the adverse action. *Arthur Young*, 631 A.2d at 368, n.28.

A protected activity for purposes of the *DCHRA*, need not take the form of a lawsuit or of a formal complaint to an enforcement agency. To the contrary, the protections of the Act extend to an employee's informal complaints of discrimination to his superiors within the organization. *Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790 (D.C. 2001); *Civil Rights Act of 1964, 42 U.S.C.A. 2000e-3.* Aiding or encouraging any other person in the exercise or enjoyment of any right under the *DCHRA* is also a protected activity. *D.C. Official Code § 2-1402.61* (2001 Edition). Moreover, under the *DCHRA*, the prohibited adverse action is not limited to retaliatory action affecting the terms and conditions of employment. *Arthur Young*, 631 A.2d at 368, n.31 *(citing Mitchell*, 759 F.2d at 86. An employee may establish a causal link between his protected activity and the adverse action, i.e., an inference of retaliation, by showing that his employer was aware of his protected activity and that the adverse action occurred shortly thereafter. *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir.1985).

If an employee successfully establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate reason for taking the adverse action. If the employer does so, the burden shifts back to the employee to prove that the articulated reason is pretext for retaliation. *Burdine*, 450 U.S. at 256. In order for Complainant to prevail on his claim of retaliation in this forum, the OHR's record must contain credible, probative, and substantial evidence from which a reasonable trier of fact would conclude that the *prima facie* elements of a case of retaliation are present and that no legitimate, nondiscriminatory explanation for the action exists.

The temporal proximity between the statutorily protected activity and the adverse action must be "very close" to establish a causal connection. *Hammond v. Chao*, 383 F. Supp.

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 16 of 18*

2d 47, 59 (D.D.C. 2005) (quoting *Clark County School District v Breeden* 532 US 268 (2001). For example, "courts generally have accepted [as a causally sufficient] time[,] periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Davis* 355 F Supp. 2d at 352 (quoting *Brodetski v Duffey*, 141 F Supp 2d 35, 43 (DDC 2001) The *Davis* Court stressed that lengths of time that are far too great, without other evidence, fail to demonstrate a causal link. See, e.g., *Buggs, 293 F. Supp. 2d at 148-49* (citing numerous cases that support the conclusion that the time separation here between a protected activity and a plaintiff's non-selection for a position is insufficient to support a finding of a causal connection).

**Respondent did not retaliate against Complainant by terminating her on June 15, 2004.**

Complainant alleges that as a result of her complaints about Respondent's Deputy Director for External Affairs made in a meeting on May 27, 2004, Respondent terminated her in a meeting on June 15, 2004.

Complainant establishes a *prima facie* case of retaliation. Complainant meets the first element by proffering that she had a meeting with Respondent on May 27, 2004 alleging that Respondent's Deputy Director was racist or made racist remarks. Complainant satisfies the second element because she was subject to an adverse action by virtue of her June 15, 2004 termination. Complainant also satisfies the third and final element. Respondent was aware of her protected activity and the approximately two (2) week period between the protected activity and adverse action creates the inference of a causal connection.

But, Complainant's case must fail because Respondent proffers legitimate nondiscriminatory reasons for its actions. Respondent contends that Complainant's work was substantially deficient. Respondent explains that after Complainant had worked for about four (4) months, it became increasingly clear that she was making little progress toward meeting her responsibilities, that she was very unfocused in her work, and that she moved from one activity to another without any plan or priority. Respondent asserts that Complainant was ineffective in developing and maintaining good relations with its membership, which included receiving complaints about Complainant's work from several members. Respondent continues that as Complainant's shortcomings became increasingly apparent, senior staff decided to provide more frequent supervision in an effort to help her succeed. Respondent claims that it attempted to hold weekly review meetings beginning in January 2004, but she resisted. Respondent's Executive Director states that in preparation for the March 12, 2004 meeting, the Deputy Director developed a written list of objectives for Complainant, with deadlines for each objective drawn from the annual work plan that Complainant and all other senior staff participated in

developing.[24]  The Deputy Director followed the same procedure in subsequent meetings, but Complainant repeatedly refused to sign her agreement to the compilations.[25]

Complainant has not proffered any credible evidence as to why these reasons are pretext and the actual reason is discrimination. As such Complainant's claim that Respondent retaliated against her by terminating her complaint must fail.

## NO CAUSE DETERMINATION

For the foregoing reasons, the OHR finds:

1.  **NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to disparate treatment on the bases of her sex (female) and sexual orientation (heterosexual) when during meetings in March and April 2004, Respondent allegedly complained about her job performance.

2.  **NO PROBABLE CAUSE** that Complainant was subjected to a hostile work environment based on her sex (female) and sexual orientation (heterosexual) when Respondent allegedly: a) singled her out by a separate evaluation process; b) complained about her keeping her office door closed and about her frequent use of emails; c) subjected her to hostile emails which ridiculed the quality of her work; d) made racially insensitive remarks and inappropriate behavior relative to African-Americans; and c) ignored her complaints to its Executive Director.

3.  **NO PROBABLE CAUSE** that Respondent retaliated against Complainant for complaining of discrimination by terminating her employment on June 15, 2004.

**IT IS SO ORDERED**

## RIGHT TO APPLY FOR RECONSIDERATION

Complainant may apply for reconsideration of the No Probable Cause determination pursuant to 4 DCMR § 719. The application, along with all supporting documentation, must be submitted in writing to the Director of the Office of Human Rights within thirty (30) calendar days from the following date:

_____7/3/06_____.

The grounds for reconsideration are limited to: new evidence, misapplication of laws, or misstatement of material facts. The request must, therefore, be based on one or more of these grounds. If the request is not based on one of these grounds, or not timely filed, it will be subjected to dismissal. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS FOR THE APPEAL IN**

---

[24] Respondent's Executive Director's Sworn Affidavit, dated July 14, 2004.
[25] Respondent's Deputy Director for External Affairs Sworn Affidavit, dated July 14, 2004.

*Lisa Ransom Brown v. Washington Council of Agencies*
*Docket No. 04-274-P (CN)*
*EEOC No.: 10CA400236*
*Page 18 of 18*

**THE ORIGINAL REQUEST FOR RECONSIDERATION.** This Office will forward a copy of any request for reconsideration along with all supporting documentation to the other party for a response.

If the Complainant does not file a request for reconsideration with OHR, this letter constitutes a final decision from OHR. Complainant has three (3) years from the date of service of this decision to file a Petition for Review with the Superior Court of the District of Columbia.

**RIGHT TO SUBSTANTIAL WEIGHT REVIEW**

Complainant has a right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission. If Complainant wishes to obtain such a review, please submit request within fifteen (15) days to the State and Local Coordinator, Equal Employment Opportunity Commission at 1801 "L" Street, N.W., 2nd Floor, Washington, D.C. 20005.

Sincerely,

Kenneth L. Saunders
Director

cc:    Washington Council of Agencies
       c/o Charles H. Fleischer
       Oppenheimer, Fleischer & Quiggle, P.C.
       7700 Old Georgetown Road, Suite 800
       Bethesda, MD 20814