**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LISA RANSOM** | )<br>)<br>) |
| Plaintiff | )<br>) |
| v. | ) Case No. 1:06-CV-843 RMC<br>) |
| **CENTER FOR NONPROFIT ADVANCEMENT** | )<br>) |
| Defendant | )<br>) |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

|  | Page |
|---|---:|
| Table of Contents | i |
| Table of Authorities | |
| Argument | 1 |
|    I.  Ransom's Rule 7(h) Statement Is Insufficient | 1 |
|    II.  Ransom Has Abandoned Negligent Supervision | 5 |
|    III.  Ransom Cannot Prove Discrimination | 6 |
|       A.  Ransom Has Abandoned Any Direct Claim of Discrimination | 6 |
|       B.  Ransom Cannot Prove Discrimination Indirectly | 7 |
|          1.  "Non-Standard Evaluation" | 7 |
|          2.  Termination | 8 |
|    IV.  Ransom Cannot Prove Retaliation | 10 |
| Conclusion | 12 |

## TABLE OF AUTHORITIES

Page

Court Rules

Fed.R.Civ.P. 56

LCvR 7(h)     1

LCvR 56.1     1

Cases

*Brown v. Small*, __ F.Supp.2d __, 2007 WL 158719 (D.D.C. No. 05-1086 RMU, decided Jan. 19, 2007)     3

*Burlington Northern & Santa Fe Ry. Co. v. White*, __ U.S. __, 126 S.Ct. 2405 (2006)     11

*Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268 (2001)     11, 12

*Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003)     6

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, (D.C.Cir. 1996)     1, 5

*Jenkins v. County of Riverside*, 398 F.3d 1093 (9th Cir. 2005)     5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)     6

*Rocafort v. IBM Corp.*, 334 F.3d 115 (1st Cir. 2003)     6

*Singletary v. District of Columbia*, 351 F.3d 519 (D.C.Cir. 2003)     11

*Smith v. Chamber of Commerce of the United States*, 645 F.Supp. 604 (D.D.C.1986)     3

*Valles-Hall v. Center for Nonprofit Advancement*, __ F.Supp.2d __, 2007 WL 779385 (D.D.C. No. 06-806 CKK, decided March 12, 2007)     5, 6, 7

*Waterhouse v. District of Columbia*, 124 F.Supp.2d 1 (D.D.C. 2000),
    *aff'd*, 298 F.3d 989 (D.C.Cir. 2002) ............................................................. 3, 5, 8

*Welzel v. Bernstein*, 436 F.Supp.2d 110 (D.D.C. 2006) ...................................... 11

**ARGUMENT**

**I. Ransom's Rule 7(h) Statement Is Insufficient**.

> LCvR 7(h), which is identical to LCvR 56.1 (formerly, Rule 108(h)), provides:
>
> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Requiring strict compliance with this rule is justified both by the nature of summary judgment and by the rule's purposes. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C.Cir. 1996).

Ransom purports to dispute, in whole or in part, some 37 out of 57 numbered paragraphs in the Center's Rule 7(h) Statement. The paragraphs Ransom does not dispute should be deemed admitted per Rule 7(h). As to those paragraphs Ransom would dispute, her Rule 7(h) Statement is far from concise, it is argumentative, and it fails in numerous instances to cite the record accurately or, in some instances, at all. These are the very defects relied on in *Jackson* to affirm summary judgment for the employer. [1]

---

[1] The Center appropriately included background facts about the Center's operations, the process by which the Center hired Ransom, the terms of Ransom's employment, and the Center's policies and processes, even though some of those facts may not be material to summary judgment. *Jackson*, 101 F.3d at 153, n.6. As the Court of Appeals observed in *Jackson*, the burden of submitting a *concise* statement of genuine issues falls only on the nonmoving party. *Id.*

For example, in paragraphs 6 of Ransom's Rule 7(h) Statement she cites to "Valles-Hall Dep. at 86-89" for the proposition that certain senior management personnel at the Center are white (a proposition, incidentally, that is unrelated to paragraph 6 of the Center's Rule 7(h) Statement). But the cited deposition pages have nothing at all to do with the racial composition of the Center's staff. Paragraphs 4, 13, 28 merely repeat the *Center's* record citations, but contain no cites in support of any claimed dispute of fact. Paragraphs 44 and 46 contain no citations at all. And paragraphs 32-37, 40, 47, 49 and 50-52 cite to other paragraphs in Ransom's Statement, not to the record itself.

An equally serious problem with Ransom's Rule 7(h) Statement is that many of her assertions are so argumentative and conclusory that they could not possibly find support in the record. Paragraph 12 of the Center's Statement describes a security problem at the Center's offices and states that Center employees take responsibility to stop and question persons within the Center's offices whom they do not recognize. Ransom responds: "Defendant's alleged 'fact' is more likely a subterfuge for different treatment to persons of color, treatment that is evidence of discriminatory animus."

In paragraph 13 the Center describes a specific incident in which a Center employee stopped and questioned a visitor whom he did not recognize. Ransom's only effort to dispute the Center is to repeat her "subterfuge" accusation.

In paragraph 24, Ransom claims that the Center's description of Ransom's job as "unique" is "a semantic smokescreen intended to obscure Defendant's disparate treatment." It is not surprising that nothing close to the expression "semantic smokescreen" appears in

the record. What does appear is testimony by Ransom herself that the hiring of an assistant was "unique" to her position at the Center, and that, but for one other person, no one spent as much time in the field as she did. Ransom Dep. 36, 40 [Apx. 21, 24].

Ransom dismisses as "pretext" or "pretextual" the numerous instances of work deficiencies and insubordination raised by the Center, relying on her own self-evaluation. See paragraphs 25-33 and 37-40 of Ransom's Statement. But Ransom cannot establish pretext simply based on her own subjective assessment of her own performance. *Waterhouse v. District of Columbia*, 124 F.Supp.2d 1, 7 (D.D.C. 2000), *aff'd*, 298 F.3d 989 (D.C.Cir. 2002) (quoting *Smith v. Chamber of Commerce of the United States*, 645 F.Supp. 604, 608 (D.D.C.1986)); *Brown v. Small*, __ F.Supp.2d __, 2007 WL 158719 *7 (D.D.C. No. 05-1086 RMU, decided Jan. 19, 2007). It is the perception of the decision maker, not the employee's self-assessment, that is relevant. *Waterhouse*, 124 F.Supp.2d at 7.

In paragraph 28 Ransom wrongly asserts that complaints others made to the Center about Ransom's performance are "hearsay, memorialized only by Defendant's own affidavit, giving rise to a credibility issue that can only be determined by a trier of fact." The outside complaints are not hearsay because they are not offered for their truth; they are offered instead because they helped form the Center's perceptions about Ransom's performance. Moreover, an unrebutted affidavit does not create a credibility issue: Fed.R.Civ.P. 56(e) provides that when a summary judgment motion is supported by affidavit, the opposing party may not rest upon the mere allegations in her pleadings, but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial.

Significant to Ransom's retaliation claim are the Center's statements at paragraph 43, 45, 46, 48, 51 and 52, dealing with when the Center decided to fire Ransom, when it actually fired her, when and the extent to which she complained to the Center about discrimination, and when the Center learned about her Office of Human Rights filing.  In paragraph 43, for example, the Center makes the straightforward statement: "In early to mid-May 2004 Johnson and Kost jointly decided to fire Ransom."  In an attempt to dispute this, Ransom says: "The issues of when, why and by whom the decision was made to fire Ransom raise genuine material factual disputes, including (but not limited to) whether Ransom's termination was discriminatory and retaliatory."  She then quotes extended passages of her deposition testimony that are wholly unresponsive to paragraph 43.  Her effort to dispute the Center's paragraph 52 (which states that the Center did not learn of Ransom's OHR charge until *after* the firing) is equally unresponsive.  See also paragraphs 45, 46, 48 and 51, which suffer from the same defect.

Finally, and perhaps most telling, is paragraph 53.  There the Center states: "Ransom has never heard Johnson or Kost use a racial epithet; no one has ever told Ransom that Johnson or Kost used a racial epithet; and Ransom has never heard anyone use a racial epithet in Johnson's or Kost's presence," citing Johnson's and Kost's affidavits and Ransom's own deposition testimony.  Ransom's response: "Regardless of whether Johnson or Kost ever used racial epithets . . .."  In claiming that she was fired for racially discriminatory reasons, Ransom simply cannot sidestep the obviously pertinent question whether the persons responsible for firing her used racial epithets in the workplace.

The deficiencies in Ransom's Rule 7(h) Statement leave material facts admitted and warrant summary judgment for the Center. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, supra; *Waterhouse v. District of Columbia*, supra; *Valles-Hall v. Center for Nonprofit Advancement*, __ F.Supp.2d __, 2007 WL 779385 * 2 (D.D.C. No. 06-806 CKK, decided March 12, 2007) (in granting summary judgment for employer, court treated as admitted all facts alleged by the employer in its Rule 7(h) statement and not specifically contradicted by plaintiff in her statement).

## II. Ransom Has Abandoned Negligent Supervision.

The Center's summary judgment motion explicitly addressed, and sought judgment on, Count III of the complaint (discrimination in violation of § 1981), Count IV (retaliation in violation of § 1981), and Count V (negligent supervision). Counts I and II, claiming discrimination and retaliation under the District of Columbia Human Rights Act, were not addressed in the motion because those counts had previously been dismissed by consent.[2]

Ransom's opposition fails even to mention, no less argue in support of, the negligent supervision count. Aside from any other basis for summary judgment, that claim should therefore be rejected as abandoned. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (a 42 U.S.C. § 1983 case in which a former county employee was held to have

---

[2] Ransom's Memorandum in Opposition ("Opp.") at 10, 11 and 26 includes references to the D.C. Human Rights Act and to "state race discrimination claims." The Center takes these references as inadvertent and not as an effort to resurrect the two dismissed counts. See Notice filed August 14, 2006, in which Ransom "respectfully gives notice to this Honorable Court that she does not oppose Defendant Center for Nonprofit Advancement's Motion to Dismiss Counts I and II of the Complaint, which Plaintiff brought under the D.C. Human Rights Act."

abandoned her claims by not raising them in opposition to the county's summary judgment motion); *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003) (employee waived hostile environment claim by not adequately addressing it in opposition to employer's summary judgment motion); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 & n.6 (11th Cir. 2003) (contract claim abandoned when not raised in opposition to summary judgment motion); *Valles-Hall v. Center for Nonprofit Advancement*, *supra*, 2007 WL 779385 * 1 (failure to oppose summary judgment motion directed to negligent infliction and negligent supervision claims amounted to abandonment of those claims).

### III. Ransom Cannot Prove Discrimination.

#### A. Ransom Has Abandoned Any Direct Claim of Discrimination.

Ransom's opposition makes clear that she is not pursuing a direct case of discrimination, but instead is relying on the indirect, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Opp. at 11-26, where she first mentions both methodologies, she identifies the factors in a *McDonnell Douglas*-type claim, and she then limits her subsequent discussion to the *McDonnell Douglas* factors. Accordingly, Ransom should be deemed to have abandoned any claim of direct discrimination.

In any event, Ransom cannot make out a direct claim of discrimination on this record. See the Center's initial Memorandum ("Mem.") at 14-17. See paragraph 53 of Ransom's Rule 7(h) Statement, where she avoids answering the Center's statement that Johnson and Kost (the individuals who fired Ransom) never used racial epithets in the workplace. Her

avoidance here is understandable, given her prior deposition testimony to that very effect. Ransom Dep. 116-19 [Apx. 67-70].

### B. Ransom Cannot Prove Discrimination Indirectly.

With respect to her indirect case, Ransom states that she "has conducted extensive discovery and uncovered significant facts from which a reasonable fact-finder could find that Defendant unlawfully discriminated against her." Opp. at 8. In fact, Ransom's discovery was limited to one round of interrogatories and document requests. The record on which she relies was developed in another case, *Valles-Hall v. Center for Nonprofit Advancement*, *supra,* involving a different employee of the Center. That case was disposed of on March 12 by summary judgment for the employer.

The two adverse employment actions on which Ransom relies are the alleged "non-standard evaluation process" to which she was subjected (Opp. at 15), and her termination (Opp. at 13). These actions are discussed separately below.

#### 1. "Non-Standard Evaluation"

Ransom claims that she was subjected to a unique, non-standard evaluation process to which no other person at the Center was subjected. Opp. at 15. Ransom does not mention the fact that the Center's formal evaluation process takes place in June or July of each year, and that Ransom was not formally evaluated because her tenure at the Center fell between evaluations. Johnson Aff. ¶ 38 [Apx. 142]; Kost Aff. ¶ 26 [Apx. 152]. Nor does she mention that Kost – Ransom's immediate supervisor – had imposed a similar weekly meeting

-7-

requirement on another person he supervised, who is a white male. Kost Aff. ¶ 17 [Apx. 150].

Assuming for argument's sake that the weekly meetings she was asked to attend, and the specific objectives she was asked to agree to, constitute an "evaluation process," they do not amount to adverse employment actions. Significantly, Ransom's discussion of this process (Opp. at 15-17) contains not a single authority in support of her claim. In contrast, the Center's memorandum cites authoritative, D.C. Circuit case law holding that criticism, conduct which wounds or offends, scrupulous monitoring, and other business practices that merely make an employee unhappy, do not amount to adverse employment actions. *See also Brown v. Brody*, 199 F.3d 446, 455-458 (D.C.Cir. 1999) ("[T]he weight of contemporary authority is solidly with the . . . [employer]. Just as lateral transfers do not ordinarily constitute 'adverse actions,' a similarly thick body of precedent . . . refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions").

### 2. Termination

The Center readily acknowledges that termination is an adverse employment action. However, as shown in its initial memorandum, the Center had compelling reasons to fire Ransom. Mem. at 19-20. Ransom responds with a claim of pretext. But her opposition falls far short of the showing required to meet summary judgment.

Much of Ransom's pretext argument is based on her own self-perception of her performance at the Center. Opp. at 13-14. Case law makes clear, however, that self-perception is irrelevant in this context. *E.g. Waterhouse v. District of Columbia*, *supra*, 124

F.Supp.2d at 7.  She also jumbles the chronology, giving the impression that her "highly successful conference event in Prince George's County" occurred *before* Johnson and Kost first concluded that Ransom's work was unfocused and without plan or priority.  Opp. at 13. In fact, Johnson's and Kost's concerns arose in January 2004, long before the June 2004 conference.  Johnson Aff. ¶¶ 24, 35 [Apx. 137, 142]; Kost Aff. ¶¶ 11, 23 [Apx. 147, 152].

Ransom attempts to buttress her pretext argument by claiming that "Kost's discriminatory animus was revealed by his avoidance of African Americans" (Opp. at 24). But "avoidance" is Ransom's gloss on a racially neutral event.  In choosing to sit with his colleagues, Kost said or did nothing of a racist nature.  Ransom Dep. 115-16 [Apx. 66-67].

As further support for her pretext claim, Ransom describes an incident in which all senior staff but she and a Latina woman allegedly participated in a meeting in Johnson's office.  Opp. at 25.  However, she offers nothing about the nature of the meeting, its purpose, or its length.  Significantly, she makes no attempt to tie the meeting to the Center's decision to fire her or to explain why that meeting renders the reasons for her firing pretextual.

Finally, Ransom cites the photograph incident as evidence of pretext.  Opp. at 26.  But it is difficult to see any racist implications in Kost's insistence that Ransom's photograph appear in the Center's newsletter along with photographs of other newsletter contributors. If Kost were truly racist, he would more likely try to keep Ransom's photograph *out* of the newsletter.  At deposition, Ransom was unable to attribute Kost's insistence to racism:

> Q.  Was Jeff racially motivated, in your opinion, by wanting to use your photo in the newsletter and on the Web site?

> A. I can't speak to that.

Ransom Dep. 227 [Apx. 108]. On the other hand, it is easy to see insubordination in Ransom's response: "[O]n the advice of counsel, I am electing not to have my photographic image used in any way either in print or on the Web by WCA at this time." Ex. 37 [Apx. 181].

## IV. Ransom Cannot Prove Retaliation.

Ransom begins her retaliation discussion with the assertion that the Center "does not dispute that § 1981 . . . support[s] retaliation claims identical to such claims recognized under Title VII." Opp. at 26. But the Center *does* dispute whether § 1981 supports a retaliation claim, having offered argument explicitly on that point. Mem. at 21. By misconstruing and thus ignoring the Center's argument, Ransom should be deemed to have conceded that § 1981 is inapplicable to retaliation claims.

Ransom cites two actions as protected activity: complaints she lodged at a meeting with Johnson and Kost; and her filing a charge with the D.C. Office of Human Rights (Opp. at 27). In analyzing her claim, it is helpful to understand the following order and timing of events:

| | |
|---|---|
| Early to mid-May: | Johnson and Kost jointly decide to fire Ransom. However, they delay doing so in order not to interfere with a June 10-11 conference in which Ransom is involved. Center Rule 7(h) State., ¶¶ 43, 44. |
| May 27: | Ransom meets with Johnson and Kost, calls Kost unprofessional and racist. Center Rule 7(h) State., ¶ 45. |

| | |
|---|---|
| June 4: | Ransom files a charge of discrimination with the D.C. Office of Human Rights.  Exhibit 14 to Ransom Dep., filed herewith. |
| June 10-11: | Ransom participates in conference in Prince George's County.  Ransom Dep. 116 [Apx. 67]. |
| June 15: | Johnson and Kost jointly fire Ransom.  Center Rule 7(h) State., ¶ 46. |
| June 17: | The Center receives a copy of Ransom's OHR charge and learns for the first time of Ransom's OHR filing.  Center Rule 7(h) State., ¶¶ 51, 52. |

Purely as a temporal matter, the Center could not have retaliated because it had already made the decision to terminate.  *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (carrying out a previously made decision "is no evidence whatever of causality"); *Welzel v. Bernstein*, 436 F.Supp.2d 110, 128 (D.D.C. 2006) (filing a discrimination claim does not immunize a poor-performing, impudent, or insubordinate employee from adverse action).

The retaliation claim is defective for other reasons, as well.  See Mem. at 22-24, showing that no reasonable person could believe any of the pre-May 27 incidents were discriminatory, that Ransom's May 27 meeting comments did not amount to a complaint of discrimination, and that the Center had legitimate, non-pretextual reasons to fire Ransom.

Ransom's reliance on *Burlington Northern & Santa Fe Ry. Co. v. White*, __ U.S. __, 126 S.Ct. 2405 (2006), is misguided.  The central holding in *Burlington* – that the retaliation need not be an *employment-related* adverse action, but only an action that might dissuade a reasonable worker from making or supporting a charge of discrimination – is not at issue here.  In this case the alleged protected activity occurred on May 27 and June 4 and the only

subsequent adverse action was Ransom's termination. Termination would obviously qualify as dissuasive if the other elements of a retaliation case were present.

In arguing for a causal connection between her allegedly protected activity and adverse actions, Ransom says that the Center's failure to cite the law of this Circuit, as set forth in such cases as *Singletary v. District of Columbia*, 351 F.3d 519 (D.C.Cir. 2003), was "presumably inadvertent." Opp. at 29. However, the Center did cite the Supreme Court case of *Clark Cnty. School Dist. v. Breeden*, which is also presumably the law of this Circuit. *Breeden* says that implementing a previously made decision in the face of subsequent protected activity "is no evidence whatever of causality." *Breeden*, 532 U.S. at 272. *Breeden* is not among the cases Ransom discusses or attempts to distinguish.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the Center's initial memorandum, the Court should grant the Center's motion for summary judgment.

    Respectfully submitted,

    OPPENHEIMER, FLEISCHER & QUIGGLE, P.C.

    By   /s/ Charles H. Fleischer
        Charles H. Fleischer, D.C. Bar No. 4341

    7700 Old Georgetown Road, Suite 800
    Bethesda, MD 20814
    tel: (301) 986-4056 / fax: (301) 951-0555
    e-mail: cfleischer@ofqlaw.com

    *Attorneys for defendant*